UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARINEMAX, INC., and NEWCOAST
FINANCIAL SERVICES, LLC,

       Plaintiffs,

v.                  Case No.  8:10-cv-1059-T-33AEP

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, P.A.,

       Defendant.
_____/

## ORDER

This cause is before the Court pursuant to Plaintiffs MarineMax, Inc. and Newcoast Financial Services LLC's Motion for Leave to File Amended Complaint (Doc. # 41), filed on October 3, 2012. Defendant National Union Fire Insurance Company of Pittsburgh, P.A. filed a response in opposition to the motion on October 22, 2012. (Doc. # 44). Also before the Court are the parties' cross-motions for summary judgment (Doc. ## 46, 48), filed on October 26, 2012. The parties filed their responses in opposition to the opposing parties' summary judgment motion on November 16, 2012. (Doc. ## 51, 52).

After due consideration, and for the reasons that follow, Plaintiffs' motion for leave to amend is denied, Plaintiffs' motion for summary judgment is granted in part and denied in part, and Defendant's motion for summary judgment is granted in part and denied in part.

I.    **Factual Background**

The material facts of this case are undisputed. Plaintiffs MarineMax, Inc. and its wholly-owned subsidiary, Newcoast Financial Services LLC,[1] are in the business of brokering loans to finance their customers' purchase of boats and recreational vehicles. National Union issued a Miscellaneous Professional Liability Policy, Policy No. 00-507-79-48, to MarineMax providing claims-made coverage for the policy period of May 15, 2008, to May 15, 2009 ("the Policy"). Newcoast is an additional insured under the Policy.

MarineMax entered into separate agreements with Bank of America, Regions Bank, and KeyBank pursuant to which MarineMax sold certain loan packages to the banks. Each of the agreements contained certain representations and warranties by MarineMax regarding the loans packages it sold. The agreements also included a provision requiring MarineMax to repurchase any affected loans in the event it was determined that MarineMax had breached any of the representations and warranties as to the loans.

---

[1]    The parties refer to the Plaintiffs collectively as "MarineMax" "since the identity of the party is not relevant to resolution of the insurance coverage issues presented herein." (Doc. # 48). Accordingly, the Court will likewise do so herein.

## A.   <u>Regions Bank Claim</u>

In July of 2008, Regions Bank made a demand for MarineMax to repurchase two loan packages MarineMax had sold it. In subsequent correspondence, Regions Bank asserted that MarineMax's "actions and or omissions with respect to the origination of both contracts constitute negligence." (Doc. # 47-4).  MarineMax provided timely notice of Regions Bank's claim to National Union.  National Union contends that it offered to appoint counsel to defend MarineMax in the matter and that MarineMax did not accept the offer of a defense. MarineMax disputes whether National Union offered to provide a defense. However, the parties agree that the issue is not material and does not affect the outcome of the case.

Pursuant to the agreement between MarineMax and Regions Bank, the dispute was submitted to arbitration in February of 2009.  Regions Bank's Statement of Claim filed in the arbitration proceeding alleged only breach of contract causes of action.  Consequently, National Union denied coverage for the claim.  MarineMax and Regions Bank ultimately settled the arbitration for $675,000.00.

## B.   <u>KeyBank Claim</u>

On November 9, 2008, counsel for KeyBank served a formal demand that MarineMax repurchase a loan package it had sold to

-3-

KeyBank. MarineMax reported the demand to National Union which declined coverage. KeyBank subsequently filed suit against MarineMax in state court alleging a breach of contract cause of action. KeyBank eventually filed an amended complaint which added a cause of action for negligence concerning the misrepresentations MarineMax made regarding the relevant loan. In light of the negligence count, National Union agreed to defend MarineMax in the lawsuit subject to a reservation of rights. The parties ultimately settled the lawsuit for $90,000, of which MarineMax and National Union each contributed $45,000.

    C. **Bank of America Claim**

In November of 2008, Bank of America wrote to MarineMax demanding MarineMax repurchase two of the loans MarineMax had sold it, the "Risch" loan and the "Muratore" loan. On November 21, 2008, MarineMax provided notice of the claim to National Union. Based on MarineMax's "extensive business relationship with Bank of America" and the bank's "threat[] to terminate the relationship if the Risch and Muratore loans were not settled," (Doc. # 48 at ¶ 21), MarineMax agreed to repurchase the loans pursuant to the agreement with Bank of America. On January 26, 2009, MarineMax paid $303,263.66 to Bank of America to repurchase the Risch loan and paid

-4-

$140,729.05 to repurchase the Muratore loan.  National Union sent a letter on February 5, 2009, denying coverage for the claim.

MarineMax filed this action against National Union on May 3, 2010, alleging breach of contract as a result of National Union's denial of coverage for the Regions Bank, KeyBank, and Bank of America claims.  Regarding the Bank of America claim, the Complaint mentions only the Risch loan and does not contain any allegations regarding the Muratore loan.

Now before the Court is MarineMax's motion for leave to amend the Complaint to add the Muratore loan to the Bank of America claim. Also before the Court are the parties' cross-motions for summary judgment regarding whether the Policy provides coverage for the banks' claims against MarineMax.

## II.  <u>Motion to Amend</u>

"The grant or denial of an opportunity to amend is within the discretion of the district court." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  While leave to amend is "freely given" under Rule 15 of the Federal Rules of Civil Procedure, a motion to amend filed after the deadline established by the Case Management and Scheduling Order, as in this case, will only be granted upon a showing of good cause under Rule 16(b)(4).  To show good cause, a party must establish that,

despite his diligence, the deadline could not be met. <u>Sosa v. Airport Sys., Inc.</u>, 133 F.3d 1417, 1419 (11th Cir. 1998)(citing Fed. R. Civ. P. 16 Advisory Committee's Note). In addition, leave to amend may be denied if the movant's conduct demonstrates "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment." <u>Foman</u>, 371 U.S. at 182.

MarineMax's motion to amend is untimely under the Court's Case Management and Scheduling Order. (Doc. # 32).  Indeed, the Case Management and Scheduling Order set December 16, 2011, as the deadline for filing motions to amend pleadings, and MarineMax's motion was filed on October 3, 2012.  As a result, the good cause standard must be met before the more liberal Rule 15 standard can apply.  In determining if MarineMax demonstrated the necessary diligence to show good cause, this Court considers whether MarineMax had access to the information contained in the proposed amendment prior to the deadline to amend. <u>Lord v. Fairway Elec. Corp.</u>, 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002).

MarineMax moves to amend the Complaint to add an additional loan -- the Muratore loan -- as part of the Bank of

-6-

America claim at issue in this action.  (Doc. # 41).  MarineMax explains that "[t]he Complaint references the Bank of America claim against MarineMax associated with a loan issued to Mr. Risch.  At or about the same time, Bank of America also made demand on a loan issued to Mr. Muratore."  Id. at ¶ 3 (internal citations omitted).  Based on these facts, the Court determines that MarineMax had access to the "new" information prior to the December 16, 2011, deadline to amend the Complaint, but failed to file its motion to amend until well after the deadline expired.  Indeed, MarineMax candidly admits that Bank of America made demand on the Muratore loan at or about the same time that it made demand on the Risch loan, which was in early to mid-2009, prior to the initiation of this action on May 3, 2010.

MarineMax provides no reason why the Muratore loan was entirely omitted from the Complaint.  Instead, MarineMax argues that "though Mr. Muratore's loan is not specifically mentioned in the Complaint, it has always been at issue in this coverage dispute.  The parties have consistently treated the Risch and Muratore loans as a single claim by Bank of America." Id. at ¶ 4. MarineMax contends that National Union "never objected to the inclusion of the Muratore loan in this action until recently, when [National Union] advised it would

-7-

oppose a claim for damages related to the Muratore loan because the name 'Muratore' was omitted from the Complaint." Id. at ¶ 7. MarineMax asserts that upon learning of National Union's objection, it acted diligently to amend the Complaint by filing the instant motion. Id. at 5.

In response, National Union argues that MarineMax is "not authorized to make statements about what National Union was 'contemplating'" as a proper subject in this action. (Doc. # 44 at 5). National Union further avers that it "'never objected' to 'inclusion' of the Muratore loan in this action" because "[n]o objection was necessary because the Muratore loan was never at issue." Id. (quoting Doc. # 41 at 3). National Union also contends that it would suffer prejudice if the amendment is allowed because it would "add more than $100,000 in damages to Plaintiff's claim." Id. at 5.

While the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "the 'short and plain statement' must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005)(citations omitted). In light of National Union's objection, the Court cannot find that the Muratore

-8-

loan has always been a part of this action, given that there is no mention of the loan in the Complaint.

Relevant to the Court's decision is MarineMax's contention that "in responding to National Union's original coverage decision, [MarineMax] identified the Risch and Muratore loans *(and the Block loan, which is not at issue in this lawsuit)*, as a single claim." (Doc. # 41 at ¶ 4)(emphasis added). Thus, by MarineMax's own admission, a third loan -- the Block loan -- could potentially have also been included as part of the Bank of America claim, yet it was not included in the Complaint presumably because it was "not at issue in this lawsuit." The Court finds that National Union was similarly entitled to rely on the omission of the Muratore loan from the Complaint as indication that the Muratore loan was also not at issue in this lawsuit. To hold otherwise, especially at this late stage in the proceedings, would not afford National Union "fair notice of what [MarineMax's] claims [are] and the grounds upon which [they] rest." Dura Pharm., Inc., 544 U.S. at 346.

As noted above, Sosa "precludes modification [of a case management deadline] unless the schedule cannot be met despite the diligence of the party seeking the extension." 133 F.3d at 1418. Here, MarineMax unquestionably was aware of the

Muratore loan before the expiration of the deadline to amend. MarineMax did not act diligently, and, therefore, good cause does not exist to allow leave to amend.

The Court's Case Management and Scheduling Order warns, "Motions to amend any pleading . . . are distinctly disfavored after entry of the Case Management and Scheduling Order." (Doc. # 32 at ¶ 7).  Further, "[t]he Eleventh Circuit has consistently held that motions filed after a deadline imposed by a court should be denied as untimely. . . . The scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Payne v. Ryder Sys., 173 F.R.D. 537, 540 (M.D. Fla. 1997)(internal citations and quotation marks omitted); Maynard v. Bd. of Regents, 342 F.3d 1281, 1287 (11th Cir. 2003)(affirming denial of motion to amend when there was "no good reason why [plaintiff] could not have made the motion earlier" and the plaintiff had not explained his failure to include the amended claim in his original filing).  Upon due consideration, the Court finds that MarineMax is not entitled to amend the Complaint and denies the motion accordingly.

## III. **Motions for Summary Judgment**

### A. **Legal Standard**

-10-

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions,

-11-

answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing <u>Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)).

**B.   <u>Analysis</u>**

The parties have filed cross motions for summary judgment in which MarineMax contends that the Policy provides coverage for the amounts paid in settlement and defense of the banks' claims (Doc. # 48 at 2), while National Union argues that the claims against MarineMax are not covered or are otherwise excluded by the Policy (Doc. # 46 at 21).

-12-

### 1.   <u>Duty to Defend and Indemnify</u>

"Florida courts have adopted a strict rule that an insurer's duty to defend an action against its insured is determined solely by the allegations in the complaint." <u>Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.</u>, 227 F. Supp. 2d 1248, 1258 (M.D. Fla. 2002)(citing <u>State Farm Fire & Cas. Co. v. CTC Dev. Corp.</u>, 720 So. 2d 1072, 1077 n.3 (Fla. 1998)).  If a complaint contains allegations, some of which would be within the policy coverage and some of which are not, then the insurer has a duty to defend the entire case.  <u>Id.</u> (citing <u>W. Am. Ins. Co. v. Silverman</u>, 378 So. 2d 28, 30 (Fla. 4th DCA 1979)).  However, "if the complaint on its face does not allege a claim that is covered by an insurance policy but 'actual facts' developed in the discovery process or otherwise show that there is potential coverage under the insurance policy, the duty to defend is still not triggered." <u>Id.</u> (citing <u>Fed. Ins. Co. v. Applestein</u>, 377 So. 2d 229, 232 (Fla. 3d DCA 1979)).

"The duty to indemnify is narrower than the duty to defend, and there must be a determination that coverage exists before a duty to indemnify arises." <u>McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n</u>, 758 So. 2d 692, 695 (Fla. 4th DCA 1999)(citation omitted).  "Thus, there

is no duty to indemnify if there is no duty to defend." <u>Allstate Ins. Co. v. Safer</u>, 317 F. Supp. 2d 1345, 1358 (M.D. Fla. 2004).  In contrast to the duty to defend, the duty to indemnify is not determined by reference to the claimant's complaint, but rather by reference to the actual facts and circumstances of the injury.  <u>Underwriters at Lloyds London v. STD Enters.</u>, 395 F. Supp. 2d 1142, 1147 (M.D. Fla. 2005). Additionally,

> insurance contracts are to be construed in a manner that is reasonable, practical, sensible, and just. . . . Terms used in a policy are given their plain and ordinary meaning and read in the light of the skill and experience of ordinary people. Provisions that exclude or limit liability of an insurer are construed more strictly than provisions that provide coverage.

<u>United States Fire Ins. Co. v. Freedom Vill. of Sun City Ctr.</u>, 279 F. App'x 879, 880-81 (11th Cir. 2008)(internal citations omitted).  Furthermore, if provisions in an insurance contract are "reasonably susceptible of more than one meaning, they are ambiguous and construed in favor of the insured.  That rule applies if a genuine inconsistency, uncertainty, or ambiguity in meaning remains after a review of the plain language." <u>Id.</u> at 881.

### 2.   <u>Coverage Under Policy's Insuring Agreement</u>

The Policy's Insuring Agreement provides as follows:

**I.   INSURING AGREEMENTS**

**A.   ERRORS AND OMISSIONS**

**We** shall pay on **your** behalf those amounts, in excess of the retention, **you** are legally obligated to pay as **damages** resulting from a **claim** first made against **you** and reported to **us** during the **policy period** . . . for **your wrongful act** in rendering or failing to render **professional services** for others, but only if such **wrongful act** first occurs on or after the **retroactive date** and prior to the end of the **policy period.**

(Doc. # 47-1 at 6)(emphasis in original).

The Policy defines certain relevant terms as follows:

**II.  DEFINITIONS**

**B.   Claim** means a written demand for money or services, including a **suit**, arising from **your wrongful act.**

\*     \*     \*

**D.   Damages** means any amount that you shall be legally required to pay because of judgments, arbitration awards or the like rendered against you, or for settlements negotiated by us with your written consent; provided that damages shall not include any amounts for which you are not financially liable or for which there is no legal recourse against you, the costs and expenses of complying with any injunctive or other form of equitable relief, or matters that may be deemed uninsurable under the law.

\*     \*     \*

-15-

K.    **Professional services** means:

Solely in the performance of:

1.    preparation of loan documents
2.    preparation of loan packages
3.    executing related documents such as title work, vessel documentation and trade payoff information
4.    providing advice on loan rates, payments, and benefits of financing
5.    providing referrals to licensed insurance agents or brokers

\*     \*     \*

Q.    **Wrongful Act** means any actual or alleged negligent act, error or omission, misstatement or misleading statement committed solely in **your** performance of **professional services**.

<u>Id.</u> at 6-8, 17, 23.

### a.    <u>Bank of America Claim</u>

Pursuant to the above-quoted Policy language, the Court finds that the amounts MarineMax seeks to recover regarding the Bank of America claim are not covered under the Policy's Insuring Agreement because these amounts do not constitute "damages" as that term is defined by the Policy.

It is undisputed that following Bank of America's demand, MarineMax repurchased the Risch loan from Bank of America pursuant to the terms of their agreement, and now seeks to recover the $303,263.66 it paid to repurchase the loan. (Doc. # 48 at 22). However, the Policy only provides coverage for

-16-

amounts MarineMax is "legally obligated to pay as **damages**" which the Policy defines as "any amount that you shall be legally required to pay because of judgments, arbitration awards or the like rendered against you, or for settlements negotiated by us with your written consent." (Doc. # 47-1 at 7).

It is undisputed that Bank of America did not file a lawsuit regarding its claim. (Doc. # 46 at ¶ 29). Thus, MarineMax was not legally required to pay Bank of America because of any "judgment, arbitration award or the like" rendered against it. Rather, MarineMax's obligation to repurchase the Risch loan stemmed from its contractual agreement with Bank of America. However, to the extent that the payment could be considered a "settlement" of Bank of America's claim, the settlement was not a settlement negotiated *by* National Union with MarineMax's written consent, as required to constitute "damages" under the Policy.

Although the Court acknowledges that insurers may be bound by an insured's settlement of a claim where coverage has been wrongfully denied, see <u>Gallagher v. Dupont</u>, 819 So. 2d 342, 347-48 (Fla. 5th DCA 2005),[2] National Union is not bound

---

[2]    "When an insurer has denied coverage that actually
                                                  (continued...)

by MarineMax's "settlement" of the claim because MarineMax repurchased the Risch loan on or about January 26, 2009 (Doc. # 47-27), which was prior to National Union's denial of coverage on February 5, 2009 (Doc. # 47-29 at 2).  Thus, any "settlement" by MarineMax of Bank of America's claim would be tantamount to a voluntary payment of the claim, which are expressly prohibited by the Policy.[3]  Accordingly, the Court finds that the amounts MarineMax expended in relation to the Bank of America claim are not covered under the Policy's Insuring Agreement because they do not constitute "damages" as that term is defined by the Policy.  National Union is entitled to summary judgment in its favor on the Bank of America claim.

### b.    Regions Bank and KeyBank Claims

---

[2](...continued)
exists, the insurer has breached the contract and therefore cannot be allowed to rely upon a contractual provision prohibiting the insured from settlement of the claim with a responsible party in order to relieve itself from liability." Gallagher, 918 So. 2d at 347-48.

[3]    The Policy states that: "You shall not admit any liability, assume any financial obligation or pay out any money without our prior written consent.  If you do, it shall be at your own expense.  In addition, you shall not take any action, or fail to take any required action, without our written consent, which prejudices our rights under this policy." (Doc. # 47-1 at 12).

Unlike the Bank of America claim, the Court finds that the Regions Bank and KeyBank claims do constitute "damages" under the Policy's insuring agreement.  The amounts MarineMax paid regarding the Regions Bank claim were paid in settlement of an arbitration proceeding brought by Regions Bank against MarineMax, and were paid after National Union had declined coverage for the claim.  (Doc. # 46 at ¶ 10, 12).  Further, given that National Union provided a defense for MarineMax in the lawsuit brought against it by KeyBank, the Court finds that the settlement reached in that case was "negotiated by" National Union, such that the settlement payment constitutes "damages" under the Policy's insuring agreement.

Although National Union does not contest that the Regions Bank and KeyBank claims are "damages" under the Policy's Insuring Agreement, National Union contends that the claims are not covered because they did not "arise from" a "wrongful act" by MarineMax, which the Policy defines as "any actual or alleged negligent act, error or omission, misstatement or misleading statement" committed solely in MarineMax's performance of its professional services.  National Union argues that the damages sought in the Regions Bank arbitration and the KeyBank lawsuit arose solely from MarineMax's refusal to repurchase the loans pursuant to their respective

-19-

agreements with the banks; "[t]hus, damages were sought for breach of the terms of the agreement, not a negligent act." (Doc. # 46 at 19).

The Florida Supreme Court has held that in an insurance context, "[t]he term 'arising out of' . . . means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" <u>Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.</u>, 913 So.2d 528, 539 (Fla. 2005).  While it is true that the Regions Bank and KeyBank claims sought damages for MarineMax's breach of contract based on MarineMax's failure to repurchase the relevant loans pursuant to their contractual agreement, the Court agrees with MarineMax that National Union's characterization of the Regions Bank and KeyBank claims is unduly narrow and ignores the fact that the claims were triggered by and arose out of MarineMax's misrepresentations to the banks regarding the loans MarineMax sold them.

Indeed, the Third Amended Statement of Claim filed in the Regions Bank arbitration lists numerous misrepresentations made by MarineMax regarding the loans, which predicated and necessitated Regions Bank's request for MarineMax to buy back the loans. (Doc. # 48-2).  The amended complaint in the KeyBank lawsuit likewise alleges that MarineMax misrepresented

-20-

facts relating to the relevant loan it sold to KeyBank. (Doc. # 48-4 at ¶ 18). The Court agrees with MarineMax that without these misrepresentations, the banks' ability to demand repurchase of the loans would never have been triggered. Thus, given the Florida Supreme Court's expansive definition of the term "arising from," the Court determines that the claims can reasonably be said to have "arisen from" MarineMax's misrepresentations.

National Union further argues that these misrepresentations cannot constitute "wrongful acts" under the Policy because the representations were made in MarineMax's contracts with the banks, such that any breach of those representations, i.e. a misrepresentation, is also tantamount to a mere breach of contract claim. However, the Policy's definition of "wrongful act," which specifically includes "misstatement[s]" and "misleading statement[s,]" does not in any way limit itself only to misstatements that are made outside of a contractual context. The Court declines to read into the Policy's definition a limitation that is not there. See Taurus Holdings, Inc., 913 So. 2d at 532 ("[C]ourts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.")(citations omitted). Furthermore, the Court agrees

with MarineMax that precluding all misstatements made in a contract from the Policy's "wrongful acts" definition would render the Policy's contractual liability exclusion, discussed below, superfluous. See MJCM, Inc. v. Hartford Cas. Ins. Co., No. 8:09-cv-2275, 2010 WL 1949585, at *5 (M.D. Fla. May 14, 2010)("The Court must seek to give effect to every policy provision, and avoid a construction that will effect to one provision while rendering another provision superfluous.").

Thus, the Court finds that even though MarineMax's misrepresentations regarding the loans were made in its contracts with the banks, such misstatements may still constitute "wrongful acts" as that term is defined by the Policy, such that coverage under the Policy's Insuring Agreement is triggered for the Regions Bank and KeyBank claims.

### 3.   Contractual Liability Exclusion

However, notwithstanding the above, the Policy expressly excludes claims:

> arising out of liability you assume under any contract or agreement, including but not limited to, any contract price, cost guarantee or cost estimate being exceeded; however, this exclusion does not apply to liability you would have in the absence of such contract or agreement.

(Doc. # 47-1 at 9).

-22-

MarineMax argues that this exclusion applies only when "the insured assumes the tort liability of a third party, not . . . to contract-based claims arising out of the insured's own conduct." (Doc. # 51 at 16-17). Based on the above-quoted language of the exclusion, the Court cannot agree with MarineMax's contention. The exclusion does not contain any language limiting it only to *tort* liability that MarineMax has assumed in a contract. Furthermore, the provision expressly states that liability for any "contract price, cost guarantee or cost estimate being exceeded" is excluded; thus, the Court agrees with National Union that the exclusion "contemplates contract obligations of the insured and is not limited to indemnification contracts of third parties." (Doc. # 52 at 20).

The cases cited by MarineMax in support of its argument are primarily from other jurisdictions and, thus, are not binding on this Court. See Cincinnati Ins. Co. v. Stonebridge Fin. Corp., 797 F. Supp. 2d 534, 540 (E.D. Pa. 2011); Federated Mut. Ins. Co. v. Grapevine Excavation, Inc., 197 F.3d 720, 726 (5th Cir. 1999); Olympic, Inc. v. Providence Wash. Ins. Co. of Alaska, 648 P.2d 1008, 1011 (Alaska 1982). Furthermore, none of the cases cited by MarineMax considered identical or similar exclusionary language in which liability

for excessive contract prices, cost guarantees or cost estimates was expressly excluded, such that the exclusion by its terms went beyond mere tort liability assumed by the insured in a contract.  Likewise, the only Florida case discussed by MarineMax, Home Insurance Co. v. Southport Terminals, Inc., 240 So. 2d 525 (Fla. 2d DCA 1970), is unhelpful because the Southport court merely found that the exclusion did not apply because the insured's liability did not arise out of a contract.

Thus, the Court finds that based on the plain language of the Policy, the contractual liability exclusion applies to all claims arising out of liability MarineMax assumed under any contract unless MarineMax would have had such liability in absence of its contracts.

The Court finds that the Regions Bank and KeyBank claims arose out of liability MarineMax assumed in its contracts with the banks.  As discussed above, the representations MarineMax made regarding the loans were memorialized in its contracts with the banks, and MarineMax assumed liability for any misrepresentations by agreeing to repurchase the loans from the banks in such event.  Additionally, both the Regions Bank arbitration and KeyBank lawsuit attempted to hold MarineMax liable by asserting breach of contract causes of action.

Given the Florida Supreme Court's broad definition of the term "arising out of," the Court finds that the Regions Bank and KeyBank claims arose out of liability MarineMax assumed under its contract with the banks such that the Policy's contractual liability exclusion applies to those claims.

However, the Court finds that the exception to the exclusion applies to the KeyBank claim. As quoted above, the contractual liability exclusion "does not apply to liability [MarineMax] would have in the absence of such contract or agreement." Unlike in the Regions Bank arbitration, which undisputedly alleged only a breach of contract cause of action, the KeyBank amended complaint also contains a count against MarineMax for negligent misrepresentation in its performance of its professional services.

National Union urges the Court to find that KeyBank's negligence claim would have been barred by Florida's "economic loss doctrine" in light of the breach of contract claim, such that MarineMax would not actually have faced any liability outside of the breach of contract claim. The Court declines to do so. As previously noted, the KeyBank claim was settled by the parties prior to any rulings on the merits. Thus, no decision was made by the underlying court on the viability of KeyBank's negligence claim and the Court finds that it would

be inappropriate to do so here.  As the facts stand, the KeyBank amended complaint included a negligent representation cause of action, which is a cognizable cause of action under Florida law.  See Moransais v. Heathman, 744 So. 2d 973, 983 (Fla. 1999)(recognizing that claim for negligent misrepresentation was not barred by economic loss rule where it was independent from underlying contract and holding that "the mere existence of . . . a contract [for professional services] should not serve per se to bar an action for professional malpractice.").  Accordingly, the Court finds that the KeyBank claim arose out of liability MarineMax faced even in absence of its contract with KeyBank, such that the exception to the contractual liability exclusion applies.

Thus, the Court finds that the Policy does not afford coverage for the Regions Bank claim but does afford coverage for the KeyBank claim.  Therefore, National Union is entitled to summary judgment in its favor in regards to the Regions Bank claim, while MarineMax is entitled to summary judgment in its favor on the KeyBank claim.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Plaintiffs' Motion for Leave to File Amended Complaint (Doc. # 41) is **DENIED.**

-26-

(2)     Defendant's Motion for Summary Judgment (Doc. # 46) is **GRANTED IN PART** and **DENIED IN PART.**

(3)     Plaintiffs' Motion for Summary Judgment (Doc. # 48) is **GRANTED IN PART** and **DENIED IN PART.**

(4)     The Clerk is ordered to enter judgment consistent with the foregoing, and thereafter, close this case.

      **DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>4th</u> day of February, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies: All Counsel of Record

-27-